Salina M. Kanai, Federal Public Defender
Melinda K. Yamaga, Assistant Federal Defender & Counsel of Record
Office of the Federal Public Defender for the District of Hawaiʻi
300 Ala Moana Boulevard, Suite 7104, Honolulu, Hawaiʻi 96850
(808) 541-2521
melinda_yamaga@fd.org

Counsel for Defendant-Appellant

In The
United States Court of Appeals for the Ninth Circuit

| | |
|---|---|
| United States of America<br>　　　Plaintiff-Appellee<br><br>　　v.<br><br>William Grant<br>　　　Defendant-Appellant | CA9 No. 23-2525<br>DC No. 1:22-cr-00069-LEK-1<br><br>Motion for Miscellaneous Relief;<br>Exhibits A–D; Certificate of<br>Service |

**Motion for Miscellaneous Relief**

Defendant-appellant William Grant, through counsel, uses this motion as a mechanism for advising the panel about a factual discrepancy in the record and perpetuated in the briefs that underlies the lead issue he presents in this appeal. That issue is whether the district court reversibly erred in holding Grant accountable for 23.8 grams of a mixture or substance containing fentanyl, rather than for 0.1 grams of fentanyl, the combined dosage amount of fentanyl on the ten,

legally manufactured, fentanyl patches he sold to a government informant. OB-9; OB-21; OB-23–29; RB-4–7.

At sentencing and in the briefs, this issue has been litigated on the assumption that the mixture at issue consisted of the liquid (or gel-like) substance on each patch, which the PSR indicated was comprised of the fentanyl and alcohol. PSR-6 (ECF 42, at ¶12) ("The fentanyl patches were distributed in their original packaging, which reflected that each patch contained 10 mg of fentanyl, or a total of 100 mg (0.1 gram) of fentanyl for ten patches. DEA laboratory analysis established that the ten patches *contained* a total of 23.8 grams (*net* weight) of N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propenamide (fentanyl)." (Emphases added.)); PSR-8–9 (¶¶23–24) (holding Grant accountable for "the entire weight of any mixture or substance containing a detectable amount of the controlled substance," which was "23.8 grams of fentanyl" in Grant's case); PSR-29–30 (Addendum) (rejecting Grant's argument that "using the total weight of the 'liquid mixture' (including fentanyl and alcohol) in a pharmaceutical patch" would be unreasonable, because, in part, the USSC's "Helpline confirmed that … fentanyl should be measured using the entire weight of the mixture or substance

containing a detectable amount of fentanyl. The representative stated that … the weight of the mixture or substance will incorporate all inactive ingredients, such as alcohol in patches[.]"). At sentencing, the district court ruling rejecting Grant's argument on this point was, accordingly, based on the PSR's factual assumption that the 23.8 grams of weight attributed to Grant was the mixture or substance of fentanyl, alcohol, and any other inactive ingredients that was on the transdermal patch. 1-ER-17–18 (adopting the PSR's reasons for rejecting Grant's argument). And, as said, the defense has thus far litigated this appeal on that factual assumption—that the 23.8 grams at issue consisted of the liquid mixture on the patches, rather than that liquid mixture *plus* the weight of the patches and their packaging.

In preparing for next week's oral argument, present counsel of record, recently assigned to argue this case, has discerned a troubling discrepancy that strongly suggests that the factual assumption that underlay Grant's arguments, the PSR's response, and the district court's ruling is wrong. Attached as Exhibit A to this motion is an image of one of the patches Grant sold the informant; Exhibit B provides images of all ten patches. The legal manufacturer's label states that

3

"[e]ach transdermal system contains 10 mg fentanyl and 0.4 ml alcohol." Exhibit A (tip: embiggen it). The alcohol is measured by way of its 0.4 ml volume on the label, but such volume is readily converted into weight by multiplying the known volume by alcohol's density. Alcohol's density is 0.789 g/ml, and, thus, each milliliter of alcohol weighs 0.789 grams. Running the math: 0.4 ml x 0.789 g/ml = 0.32 g (0.3156 g, to be precise). Thus, there was only 0.32 grams of alcohol on each patch. And, when combined with the 0.01 grams of fentanyl on each patch, the mixture or substance on each patch weighed 0.33 grams. Spread over ten patches, the mixture at issue comes to 3.3 grams, not the 23.8 grams attributed to Grant.

Science and math thus indicate that the "net" weight that the DEA laboratory's reports listed included the weight, 20.4 grams, of the patches and (perhaps) their wrappers. Exhibit C provides a copy of the underlying DEA laboratory reports. But those reports do not provide much clarity as to what the laboratory included (and did not include) in calculating the "net weight" of fentanyl. The reports simply state that "[t]he net weight was determined by direct weighing of all the unit(s)," without further explanation. In hindsight, the vague word "unit" could

4

have meant the wrapped patches, the unwrapped patches, or the liquid mixture on each patch. Defense counsel (at sentencing and in drafting the briefs on appeal), the probation officer, the USSC's Helpline, and the district court all seem to have understood the "net weight" to be the "unit" of the "liquid mixture" on the patches. But the math and science noted above indicates that that simply cannot be the truth of it. And that the lab apparently calculated the "gross" weight of all ten patches by placing evidence bags on the scale, *see* Exhibit D, is another indication that all of the aforementioned parties were wrong in that assumption and the "net" weight amount of 23.8 grams includes the patch and, perhaps, each patch's wrapper, rather than just the liquid mixture on each patch.

In light of the foregoing, present counsel emailed the government's counsel on October 1, 2024, to ask if he knew whether the 23.8-gram amount included the "entire patch" rather than just the liquid mixture on it. His response, received on October 2nd, consisted of simply one word: "Confirmed."

What to do about it, though, at this point?

If this Court agrees with Grant's lead argument on appeal that the listed dosage amount should have been used (or, for that matter, grants a resentencing remand on either of his other two arguments), then this Court could simply note this factual discrepancy and allow the district court and the parties to clean it up at resentencing on remand.

Alternatively, this Court could table its consideration of Grant's appeal, while temporarily remanding his case back to the district court for that court to clarify whether it sentenced Grant on the assumption that the 23.8 grams attributed to Grant was the mixture or substance on the patches, rather than a weight that included 20.4 grams of the patch and packaging material. If the district court confirms that that is indeed what it had in mind when rejecting Grant's argument that just the dosage weight should be used, then (as this Court's remand order could make clear to authorize), the district court could indicate that it agrees that Grant should be resentenced on a proper framing of what comprises the mixture and, thus, the weight that he is being held accountable for distributing. In accord with the procedure outlined in

6

Cir. R. 12.1,[1] this Court could then reassert jurisdiction, summarily vacate Grant's present sentence, and remand for the district court to conduct that resentencing.

---

[1]   Circuit Rule 12.1 provides a mechanism for this Court to temporarily remand a case to the district court in certain circumstances. Specifically, Rule 12.1(a) provides: "If a timely motion is made in the district court for relief that it lacks authority to grant because of an appeal that has been docketed and is pending, the movant must promptly notify the circuit clerk if the district court states either that it would grant the motion or that the motion raises a substantial issue." Rule 12.1(b) then adds: "If the district court states that it would grant the motion or that the motion raises a substantial issue, the court of appeal may remand for further proceedings but retains jurisdiction unless it expressly dismisses the appeal. If the court of appeals remands but retains jurisdiction, the parties must promptly notify the circuit clerk when the district court has decided the motion on remand."

Given that oral argument is scheduled to occur next week, on October 9, 2024, time does not readily allow for the filing of an 18 U.S.C. §2255 motion raising a claim under *Brady v. Maryland*, 373 U.S. 83 (1963), based on the government never clarifying that the net weight of 23.8 grams included the patch and packaging material and was not simply the "liquid mixture" that defense counsel, the probation officer, the USSC Helpline, and the district court believed it was when litigating this issue below at sentencing. Nonetheless, the practical procedure that Rule 12.1 envisions—of remanding to the district court to make a clear statement (that it did not intend to hold Grant accountable for the weight of the patch and its packaging, but intended only to hold him accountable for the weight of the liquid mixture of fentanyl, alcohol, and other inactive ingredients) and that it agrees resentencing should occur to rectify that mistake, and then summarily vacating and remanding for that resentencing to occur—would be appropriate here.

Grant is open to other suggestions as to how to best clarify the record, maintain the integrity of the district court's ruling, and address the factual discrepancy aired in this motion. Present counsel is not trying to 'sandbag' the government (or, for that matter, this Court) on the eve of oral argument. She and the Office of the Federal Public Defender for the District of Hawai'i as a whole instead believe that defense counsel has an obligation to bring this discrepancy to this Court's attention, so as to ensure that this Court does not decide this appeal on a factual assumption that is patently false.

The government does not oppose the filing of this motion but does oppose a temporary remand.

The exhibits supporting this motion have been taken from discovery provided by the government. To be specific: Exhibit A is a copy of GRANT_000140; Exhibit B is copies of GRANT_000200 and GRANT_000203; Exhibit C is copies of GRANT_000238 and GRANT_000239; and Exhibit D is copy of GRANT_000199.

Date: Honolulu, Hawai'i, October 2, 2024.

/s/ Melinda K. Yamaga
Melinda K. Yamaga
Assistant Federal Defender
*Counsel for Defendant-Appellant*

8



GRANT_000140





**U.S. Department of Justice**
**Drug Enforcement Administration**

Southwest Laboratory
Vista, CA

# Chemical Analysis Report

Honolulu District Office
300 Ala Moana Boulevard, #3147
Honolulu, HI 96850

**Case Number:** R4-22-0040
**LIMS Number:** 2022-SFL8-05083

## Observations, Results and Conclusions:

| Exhibit | Substance(s) Identified | Net Weight | Substance Purity | Amount Pure Substance |
|---|---|---|---|---|
| 1 | N-Phenyl-N-[1-(2-phenylethyl)-4-piperidinyl]propanamide (Fentanyl) | 11.6 g ± 0.2 g | ---- | ---- |

**Remarks:**
The net weight was determined by direct weighing of all unit(s). The net weight uncertainty value represents an expanded uncertainty estimate at the 95% level of confidence.

## Exhibit Details:

**Date Accepted by Laboratory:** 08/15/2022    **Gross Weight:** 82.7 g    **Date Received by Examiner:** 09/13/2022

| Exhibit | No. Units | Pkg. (Inner) | Form | Reserve Wt. |
|---|---|---|---|---|
| 1 | 5 | Other | Other | 10.6 g |

**Remarks:**
Inner packaging consisted of foil patches.

Gross form was a patch.

## Exhibit Analysis:

**Sampling:**
Fentanyl identified in all unit(s) received.

| Exhibit | Summary of Test(s) |
|---|---|
| 1 | Gas Chromatography/Mass Spectrometry, Immunoassay Test |

The terminology used in the preparation of this report is consistent with the current Department of Justice Uniform Language for Testimony and Reports for General Forensic Chemistry and Seized Drug Examinations.

**Analyzed By:** /S/ Ashley L. Bennett, Senior Forensic Chemist    **Date:** 09/21/2022
**Approved By:** /S/ Michael M. Brousseau, Senior Forensic Chemist    **Date:** 09/23/2022

**U.S. Department of Justice**
**Drug Enforcement Administration**

Southwest Laboratory
Vista, CA

# Chemical Analysis Report

Honolulu District Office
300 Ala Moana Boulevard, #3147
Honolulu, HI 96850

**Case Number:** R4-22-0040
**LIMS Number:** 2022-SFL8-05084

## Observations, Results and Conclusions:

| Exhibit | Substance(s) Identified | Net Weight | Substance Purity | Amount Pure Substance |
|---|---|---|---|---|
| 2 | N-Phenyl-N-[1-(2-phenylethyl)-4-piperidinyl]propanamide (Fentanyl) | 12.2 g ± 0.2 g | ---- | ---- |

**Remarks:**
The net weight was determined by direct weighing of all unit(s). The net weight uncertainty value represents an expanded uncertainty estimate at the 95% level of confidence.

## Exhibit Details:

**Date Accepted by Laboratory:** 08/15/2022    **Gross Weight:** 83.9 g    **Date Received by Examiner:** 09/13/2022

| Exhibit | No. Units | Pkg. (Inner) | Form | Reserve Wt. |
|---|---|---|---|---|
| 2 | 5 | Other | Other | 11.0 g |

**Remarks:**
Inner packaging consisted of foil packages.

Gross form was a patch.

## Exhibit Analysis:

**Sampling:**

Fentanyl identified in all unit(s) received.

| Exhibit | Summary of Test(s) |
|---|---|
| 2 | Gas Chromatography/Mass Spectrometry, Immunoassay Test |

The terminology used in the preparation of this report is consistent with the current Department of Justice Uniform Language for Testimony and Reports for General Forensic Chemistry and Seized Drug Examinations.

**Analyzed By:** /S/ Ashley L. Bennett, Senior Forensic Chemist    **Date:** 09/21/2022
**Approved By:** /S/ Michael M. Brousseau, Senior Forensic Chemist    **Date:** 09/23/2022



## Certificate of Service

Undersigned counsel hereby certifies that by the method of service noted below, a true and correct copy of the foregoing was served on the following at the last known address on October 2, 2024:

Served Electronically via ACMS:

THOMAS C. MUEHLCK                    tom.muehleck@usdoj.gov
Assistant United States Attorney
300 Ala Moana Blvd., Rm. 6100
Honolulu, Hawai'i 96850
    Attorney for Plaintiff
    UNITED STATES OF AMERICA

Dated: Honolulu, Hawai'i, October 2, 2024.

                                  */s/ Melinda K. Yamaga*
                                  Melinda K. Yamaga
                                  Assistant Federal Defender
                                  *Counsel for Defendant-Appellant*